**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| TURNER CONSTRUCTION COMPANY, INC., | : : : | |
| Plaintiff, | : : | **OPINION** |
| v. | : : | Civ. No. 07-666 (WHW) |
| BRIAN TREMATORE PLUMBING & HEATING, INC., | : : : | |
| Defendants and Third Party Plaintiff, etc. | : : : : | |

**<u>Walls, Senior District Judge</u>**

This matter comes before the Court on the motions to sever, pursuant to Fed. R. Civ. P. 21, filed by Tioga Pipe Supply Company, Inc. ("Tioga") and John Maneely Company d/b/a Wheatland Tube Company ("Wheatland"). Tioga asks the Court to sever the claims between Plaintiff, Turner Construction Company, Inc. ("Turner"), and Defendant, Brian Trematore Plumbing & Heating, Inc. ("BTPH"), from all other claims in the action (the "Third Party Claims"). Wheatland asks the Court to sever the claims brought against it by Third-Party Defendant/Fourth-Party Plaintiff, Central Jersey Supply Company ("Central Jersey"), from the other claims in the action. No parties have opposed the motions to sever. Pursuant to Fed R. Civ. P. 78, the Court decides the motions without oral argument. The Court grants Tioga's motion to sever. The Court lacks subject matter jurisdiction over the severed Third Party Claims and dismisses them without prejudice. The Court denies as moot Wheatland's motion to sever.

NOT FOR PUBLICATION

## FACTS AND PROCEDURAL HISTORY

In February 2000, Turner agreed, as general contractor, to construct a residential project (the "Project") in Jersey City, New Jersey.  On April 4, 2001, Turner entered into a subcontract agreement (the "Subcontract") with BTPH providing that BTPH would complete all plumbing work for the Project.  The Subcontract listed various documents containing the drawings and specifications that BTPH would follow in performing its plumbing work.  One drawing provided that BTPH would use copper for certain piping at the Project.

On February 8, 2007, Turner sued BTPH in this Court, alleging that BTPH breached the Subcontract by installing galvanized steel piping where copper piping was required. (Compl. ¶¶ 16-17.)  Turner alleges that the galvanized steel piping caused leaks in the Project's domestic water system and accelerated corrosion of the pipes.  (Compl. ¶¶ 17, 19.)  Turner later amended its Complaint to add a cause of action for negligence, alleging that BTPH "negligently substituted galvanized steel piping in place of the specified copper piping."  (Amended Compl. ¶ 50.)  Turner seeks damages in excess of $2.6 million.  (Amended Compl. ¶¶ 45, 52.)

On April 13, 2007, BTPH filed an Amended Answer and Third-Party Complaint against Central Jersey, alleging that BTPH purchased "[a]ll galvanized piping" for the Project from Central Jersey.  (Third-Party Compl. ¶ 6.)  BTPH alleged that the piping supplied by Central Jersey was improperly welded, which caused it to leak.  (Third-Party Compl. ¶ 8.)  On June 8, 2007, BTPH filed a counterclaim against Turner, alleging that Turner and BTPH had not understood the Subcontract to require copper piping, and asking the Court to reform the

NOT FOR PUBLICATION

Subcontract to "accurately reflect the intention and conduct of the parties."  (Counterclaim,

Prayer for Relief.)

A series of filings ensued.  On June 19, 2007, Central Jersey filed a counterclaim

against BTPH (seeking contribution and indemnification) and Fourth-Party Complaint against

Tioga, alleging that any damages suffered by Plaintiff were the "proximate result of negligence"

by Tioga, and seeking contribution and indemnification.  On January 24, 2008, Tioga filed

counterclaims against BTPH and Central Jersey (seeking contribution and indemnification) and a

Fifth-Party Complaint against Fifth-Party Defendant/Sixth-Party Plaintiff, Vass Pipe and Steel

Co. Ins. ("Vass"), alleging that any damages suffered by Plaintiff were the "proximate result of

negligence" by Vass, and seeking contribution and indemnification.[1]  On April 1, 2008, Vass

filed counterclaims against BTPH, Central Jersey, and Tioga (seeking contribution and

indemnification) and a Sixth-Party Complaint against Sixth-Party Defendant/Seventh-Party

Plaintiff, Macsteel Services Center ("Macsteel"), alleging that any damages suffered by any party

"were the proximate result of the negligent, wrongful or tortious act or omission" of Macsteel,

and seeking contribution and indemnification.[2]  On June 6, 2008, Macsteel filed counterclaims

against BTPH, Central Jersey, Tioga, and Vass (seeking contribution and indemnification), and a

Seventh-Party Complaint against Seventh-Party Defendants, ABC Corps. 1-100 and John Does

---

[1]     The Court entered a consent order on June 15, 2009 dismissing the Fifth-Party
Complaint filed by Tioga against Vass with prejudice, pursuant to a stipulation agreed to by the
parties.

[2]     The Court entered a consent order on July 20, 2009 dismissing the Sixth-Party
Complaint filed by Vass against Macsteel with prejudice, pursuant to a stipulation agreed to by
the parties.

**NOT FOR PUBLICATION**

1-100 (fictitious parties), alleging that the fictious parties "may have supplied materials and/or manufactured materials and/or were negligent in some other way," and seeking contribution and indemnification.

On January 21, 2009, BTPH filed an Amended Counterclaim and Third-Party Complaint, adding a count for breach of contract to its complaint against Central Jersey.  On March 3, 2009, Central Jersey filed an Answer to the Amended Third-Party Complaint and an Amended Fourth-Party Complaint against Fourth-Party Defendants Tioga, Hyundai Hysco, USA, Inc. ("Hyundai"), Wheatland Tube Company ("Wheatland"), Sawhill Tubular ("Sawhill"), and ABC Companies and 123 Corporations (fictitious parties), seeking contribution and indemnification.

On May 26, 2009, BTPH moved to amend its Third-Party Complaint to add claims against a "newly discovered party."  Brian Trematore, the President of BTPH, explained that he originally believed that Central Jersey was the only supplier of the galvanized steel piping used at the Project.  But on May 12 or May 13, 2009, he found a purchase order for galvanized steel piping from another supplier, Neill Supply Co. ("Neill Supply").  (Trematore Cert. ¶ 5-9.) BTPH argued that Turner would not be prejudiced if Neill Supply was added as a third-party defendant because "Turner's position throughout the litigation has been that the Third Party Claims are not relevant to its cause of action, which is primarily based on a breach of contract; it has not added any claims under a theory of product liability; it has not sought to add the Third Party Defendants directly; and it has asserted an intention to file a motion to sever its cause of action.  Given that Turner believes the third party actions to be irrelevant to adjudication of its

-4-

**NOT FOR PUBLICATION**

claim, it stands to reason that Turner will not expand significant resources participating in them."
(BTPH Br. at 4.)  BTPH's motion was granted on July 30, 2009.  BTPH filed an amended
complaint adding Neill Supply as a third-party defendant on August 3, 2009.

       Meanwhile, fact and expert discovery between the parties in the underlying
dispute, Turner and BTPH, was completed.  On May 26, 2009, Tioga filed its motion to sever the
claims between the two main parties, Turner and BTPH, from the Third Party Claims.  Tioga
noted that discovery between the two main parties had concluded, whereas additional parties
were still being added to the Third Party Claims, and argued that efficient administration of
justice "cries out" for severance.  (Tioga Br. at 4.)  Wheatland later filed its motion asking the
Court to sever the claims brought against it from the other claims in the action.

       On June 1, 2009, four parties filed summary judgment motions.  Turner moved for
partial summary judgment asking the Court to find that BTPH is liable for breach of contract
(First Cause of Action) and required to pay Turner attorneys' fees and other litigation-related
costs (Third Cause of Action).  Turner also asked the Court to dismiss BTPH's counterclaim for
reformation of the Subcontract.  BTPH moved for partial summary judgment asking the Court to
dismiss the First Cause of Action and Third Cause of Action of Turner's complaint.  Central
Jersey moved for summary judgment asking the Court to dismiss all claims, counterclaims, and
crossclaims against Central Jersey.  Tioga moved for summary judgment asking the Court to
dismiss the Complaint and all crossclaims against Central Jersey.

       On August 4, 2009, Tioga filed an Answer to the Amended Fourth-Party
Complaint, counterclaims against BTPH and Central Jersey (seeking contribution and

NOT FOR PUBLICATION

indemnification), and a First Amended Fifth-Party Complaint against Wheatland, Sawhill

Tubular, Hyundai, and Neill Supply seeking contribution and indemnification.  On August 24,

2009, Wheatland filed its Answer to the Fifth-Party Complaint.  On August 27, 2009, Hyundai

filed its Answer to the Fifth-Party Complaint.  Hyundai asserted counterclaims against BTPH,

Central Jersey, and Tioga (seeking contribution indemnification), and crossclaims against all

Fifth-Party Defendants (seeking contribution and indemnification).  On September 30, 2009,

Neill Supply filed its Answer and asserted counterclaims and crossclaims against BTPH, Central

Jersey, Wheatland, Tioga, Hyundai, and Saw Hill Tubular, seeking contribution and

indemnification.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 21, a court "may at any time, on just terms, add or drop a

party.  The court may also sever any claim against a party."  Fed. R. Civ. P. 21.   District courts

have "broad discretion" in deciding whether to sever a party pursuant to Rule 21.  Lopez v. City

of Irvington, No. 05-cv-5323, 2008 U.S. Dist. LEXIS 14941, at *5 (D.N.J. Feb. 27, 2008).

Although Rule 21 is most commonly used to solve joinder problems, the rule "may also be

invoked to prevent prejudice or promote judicial efficiency."  Lopez, at *5.  Claims that are

severed pursuant to Rule 21 "become independent actions with separate judgments entered in

each."  White v. ABCO Eng'g Corp., 199 F.3d 140, 145 (3d Cir. 1999).

Alternatively, Fed. R. Civ. P. 42(b) states:  "For convenience, to avoid prejudice,

or to expedite and economize, the court may order a separate trial of one or more separate issues,

claims, crossclaims, counterclaims, or third-party claims."  Fed. R. Civ. P. 42(b).  When claims

NOT FOR PUBLICATION

are bifurcated under Rule 42, all parts of the action remain "part of one single action which would result in a single judgment." White, 199 F.3d at 145. See also Rodin Properties-Shore Mall v. Cushman & Wakefield, Inc., 49 F. Supp. 2d 709, 720 (D.N.J. 1999) ("Separate trials will usually result in one judgment, but severed claims become entirely independent actions to be tried, and judgment entered thereon, independently." (quoting 9 Wright & Miller, Federal Practice & Procedure: Civil § 2387 (1971)).

## DISCUSSION

The decision whether to sever claims pursuant to Rule 21 or bifurcate claims pursuant to Rule 42(b) "is committed to the sound discretion of the district court." Crowley v. Chait, No. 85-cv-2441, 2006 U.S. Dist. LEXIS 8894, at *22 (D.N.J. Mar. 7, 2006). Severing claims under Rule 21 is appropriate where the claims to be severed are "discrete and separate" in that one claim is "capable of resolution despite the outcome of the other claim." Gafney v. Riverboat Services of Indiana, Inc., 451 F.3d 424, 442 (7th Cir. 2006). Bifurcating claims is appropriate "where claims are factually intertwined, such that a separate trial may be appropriate, but final resolution of one claim affects the resolution of the other." Gafney, 451 F.3d at 442.

"In deciding whether to grant a severance, the court is required to balance the factors of benefit and prejudice that will result from the alternative courses." Cruzan Terraces, Inc. v. Antilles Ins., Inc., 138 F.R.D. 64, 65 (D.V.I. 1991). "Specific factors are '(1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if it is granted, and (4) whether

NOT FOR PUBLICATION

the party requesting the severance will be prejudiced if it is not granted.'" Official Comm. of

Unsecured Creditors v. Shapiro, 190 F.R.D. 352, 355 (E.D. Pa. 2000) (quoting German v. Fed.

Home Loan Mortgage Corp., 896 F. Supp. 1385, 1400 (S.D.N.Y. 1995)).  See also Sutton Hill

Assocs. v. Landes, No. 87-cv-8452, 1988 U.S. Dist. LEXIS 4746, at *5 (S.D.N.Y. May 25, 1998)

(noting that courts ruling on a motion to bifurcate consider these same factors).  No one factor is

determinative, and a court must consider the "overall equities" of a case in ruling on a motion to

sever or bifurcate.  Rodin, 49 F. Supp. 2d at 721.

    Claims may be independent and appropriate for severance under Rule 21 even if

the "overall financial exposure" of a party would be affected by the final outcome of both

actions.  Gafney, 451 F.3d at 443.  Claims for contribution and indemnification are severable

under Rule 21 from the underlying primary liability claims.  Gafney, 451 F.3d at 444

(indemnification claims are severable from the underlying primary liability claims) (citing Rice

v. Sunrise Express, Inc., 209 F.3d 1008, 1016 (7th Cir. 2000)).  See also Cruzan, 138 F.R.D. at

66 ("It would be unfair to make plaintiff wait for an indefinite, and quite possibly, lengthy period

before its claims are heard. . . .  It is more efficient to adjudicate the plaintiff's claims quickly,

and provide a remedy for its damages, if warranted. . . . [A]ny future claims by defendants for

indemnity and/or contribution may be litigated more concisely in a separate proceeding.");

DeLoach v. Markim, No. 85-1581, 1985 U.S. Dist. LEXIS 16859, at *3-4 (Aug. 14, 1985) ("It

would be possible to sever plaintiffs' action against [defendant] from [defendant's] third-party

action against [third-party defendant] since [defendant's] action is based on contribution.  The

issue of contribution will not arise until a jury finds that [the defendant] is liable for plaintiff's

NOT FOR PUBLICATION

injury."); <u>Dise v. Express Marine, Inc.</u>, No.08-cv-127, 2008 U.S. Dist. LEXIS 40443, at *14

(S.D. Ala. May 19, 2008) (courts may sever and transfer third-party claims for contribution or

indemnification from the primary claims without defeating the propriety of the third-party

claims).

       Tioga argues that the action at bar "cries out" for severance because the "case as

plead is clearly two separate cases." (Tioga Br. at 4.)  Tioga argues that the primary claim,

between Turner and BTPH, involves the "specifics of the contract between those two parties

(copper vs. galvanized)."  Tioga argues that this case is "completely different" from the Third

Party Claims involving "who supplied the galvanized and from what manufacturer." (Tioga Br.

at 5.)  Tioga also argues that, because fact and expert discovery is complete between Turner and

BTPH, whereas new parties may still be added to the Third Party Claims, the efficient

administration of justice favors a prompt resolution of the primary fully discovered claims.

(Tioga Br. at 4.)  Tioga notes that resolution of the case between Turner and BTPH may make the

Third Party Claims moot. (Tioga Br. at 4.)

       Similarly, Wheatland argues that "it is difficult to imagine a case more

appropriate for severance than this one." (Wheatland Br. at 4.)  Wheatland contends that the

"underlying case is essentially a contract dispute between Turner and BTPH" whereas "the only

issue raised by the claims against Wheatland is whether Wheatland manufactured defective

pipe." (Wheatland Br. at 5.)  Wheatland argues that these claims "require completely different

testimony and documentary proof" and that severance is appropriate. (Wheatland Br. at 4.)

Wheatland also notes that discovery in the primary case is complete and "does not implicate

NOT FOR PUBLICATION

Wheatland in any way." (Wheatland Br. at 5.) Wheatland contends that delaying resolution of

the original case to allow the newly added parties to partake of discovery would be prejudicial to

the underlying parties and would prevent an efficient resolution to the proceedings. (Wheatland

Br. at 6.)

        The Court finds that it is proper to sever this case pursuant to Fed. R. Civ. P. 21.

Every factor relevant to the Rule 21 analysis favors severance in this matter. The primary issue

in the underlying dispute (whether BTPH's decision to use galvanized piping was a contractual

breach or negligent) is "significantly different" from the contribution/indemnification issues

raised in the Third Party Claims (involving whether someone manufactured and supplied

defective piping to BTPH). Shapiro, 190 F.R.D. at 355. The two sets of claims "require the

testimony of different witnesses and different documentary proof." Id. And claims by a

defendant against third parties for contribution and/or indemnification are generally severable

from the underlying primary liability claims. See Cruzan, 138 F.R.D. at 66 ("[A]ny future claims

by defendants for indemnity and/or contribution may be litigated more concisely in a separate

proceeding."); DeLoach, 1985 U.S. Dist. 16859, at *3-4 ("It would be possible to sever plaintiffs'

action against [defendant] from [defendant's] third-party action against [third-party defendant]

since [defendant's] action is based on contribution ); Gafney, 451 F.3d at 444 (indemnification

claims are severable from the underlying primary liability claims); Gail v. New England Gas Co.,

Inc., 247 F.R.D. 282, 287 (D.R.I. 2008) (noting that plaintiffs "would not be required to

participate in a trial to determine whether [defendant] is entitled to contribution, which would

**NOT FOR PUBLICATION**

involve the presentation of considerable evidence that is irrelevant to the plaintiffs' claims

against [defendant]").

        In addition, the efficient resolution of justice supports severing the underlying

claims and resolving them, rather than subjecting the Plaintiff to an "indefinite" delay as

discovery on the Third Party Claims continues.  Cruzan, 138 F.R.D. at 66.  BTPH moved to add

a new Third-Party Defendant, Neil Supply, on May 26, 2009, after discovery between BTPH and

Turner was already completed, and five days before BTPH and Turner filed their summary

judgment motions.  In this context, severing the Third Part Claims and not delaying resolution of

the primary case is particularly appropriate.  See Evans v. Johns-Manville Sales Corp., No. 80-

cv-2939, 1982 U.S. Dist. LEXIS 17374, at *8 (D.N.J. Oct. 5, 1982) ("In the instant cases

discovery has been virtually completed. . . . [T]his court is strongly opposed to any further

delay . . . . ); Gail, 247 F.R.D. at 286 (declining to "further postpone[]" the primary liability case

as discovery continued in defendant's third-party action for contribution and indemnification).

Moreover, because no party has opposed the motions to sever, no party "opposing the severance

will be prejudiced if it is granted."  Shapiro, 190 F.R.D. at 355.

        After severing the claims between Turner and BTPH from the other claims in this

action pursuant to Rule 21, the Court must evaluate whether it has subject matter jurisdiction

over the two separate actions that result from the severance.  See Admiralty Ins. Co. v. Heath

Holdings USA, Inc., No. 03-1634, 2005 U.S. Dist. LEXIS 39861, at *12 (N.D. Tex. Dec. 21,

2005) (a "severed action must have an independent jurisdictional basis") (citing Honeywell

Internat'l, Inc. v. Phillips Petroleum Co., 415 F.3d 429, 431-32 (5th Cir. 2005)).  Here, the Court

-11-

NOT FOR PUBLICATION

does not have subject matter jurisdiction over the severed Third Party Claims because BTPH, the

Third Party Plaintiff, and Central Jersey, a Third Party Defendant, are New Jersey residents.  (See

Compl. ¶ 2; Fourth Amended Third Party Compl. ¶ 6.)  As a result, subject matter jurisdiction

based on diversity of parties does not exist.  28 U.S.C. § 1332.  See McAbee v. McAbee, 277

Fed. Appx. 223, 226 (3d Cir. 2008) ("To establish subject matter jurisdiction pursuant to

diversity of citizenship, no parties may share citizenship of the same state, and the amount in

controversy must exceed $75,000."); United States v. Washington, 549 F.3d 905, 913 (3rd Cir.

2008) ("[U]nlike state courts, federal courts are courts of limited jurisdiction and only have the

powers that Congress and the Constitution have provided them.").  The Court will dismiss the

Third Party Claims without prejudice for lack of subject matter jurisdiction.

### CONCLUSION

The Court grants Tioga's motion to sever the claims between Turner and BTPH

from all other claims in this action.  The Court does not have subject matter jurisdiction over the

latter group of claims, and dismisses those claims without prejudice.  The Court denies as moot

Wheatland's motion to sever.


October 5, 2009                                          s/William H. Walls
                                                United States Senior District Judge

-12-